KNOLL, Judge.
This appeal arises out of a judgment terminating the parental rights of John and Sara to their daughter, MRR. Appellants assert the trial court erred in: 1) holding there was no reasonable expectation of reformation by either parent; and 2) not considering the return of MRR to Sara conditioned on Sara separating from John. For the following reasons, we affirm the judgment of the trial court.
PROCEDURAL HISTORY
MRR was born to Sara and John on May 10, 1984. The case began with the issuing of an Instanter Order on September 20, 1989, placing MRR in temporary custody of the Department of Social Services (Department). The affidavit supporting the order alleged John had sexually abused MRR. On December 12, 1989, judgment was rendered finding MRR to be an abused child in need of care pursuant to LSA-C.J.P. Art. 76 (now LSA-Ch.C. Art. 666). The judgment provided for the Department’s continued custody of MRR and ordered MRR and John to undergo psychological counseling. While Sara was allowed regular visitation, John was only allowed visitation as the therapists thought appropriate. The terms of the judgment were reviewed by the court approximately every six months between December 1989 and August 1991. On each occasion, the terms were continued in substantially the same form with MRR remaining in the Department’s custody. On December 12, 1991, the Department filed a Petition for Termination pursuant to LSA-Ch.C. Art. 1015(5). Judgment was rendered on this petition on May 21, 1993, terminating all parental rights of John and Sara and making MRR available for adoption.
In conjunction with its ruling, the trial court issued lengthy and thorough oral reasons for judgment. We have reviewed the record and found these reasons to be a thoughtful and accurate summary of the evidence presented at trial. In addition to John, Sara and MRR, the court heard a battery of expert witnesses testify about the emotional and psychological status of this family. These included: two psychiatrists (Drs. Rathmell and Naubors); two psychologists (Drs. Post and Williams); two clinical social workers (Brenda Lafleur and Robert *1303 Walker); a therapist (Jo Lynn Doland); a case worker from the Office of Community Services (Julie Bohs); and John and Sara’s marriage counselor (Jerry Leblanc).
REASONABLE EXPECTATION OF REFORMATION
The appellants contend the trial court erred in holding there is no reasonable expectation of John and Sara reforming in the foreseeable future. We begin our review by noting that the likelihood of reformation is a question of fact and the trial court’s determination will not be set aside absent manifest error. State, In Interest of CH, 599 So.2d 850 (La.App. 1st Cir.1992).
The law governing on what grounds parental rights may be terminated is found under LSA-Ch.C. Art. 1015. This article provides in pertinent part:
“The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
⅜ ⅜ ⅜ ‡ ⅜ ⅜
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent’s custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.”
In finding no reasonable expectation of reform by John, the trial court was apparently heavily influenced by John’s lack of response to therapy due to John’s unwillingness to admit he was involved in the abuse. While John has consistently denied sexually abusing MRR, the evidence strongly indicated MRR was sexually abused and at least one expert witness, Dr. Post, firmly believed John was the perpetrator. Dr. Post was strongly of the opinion that John could not obtain any benefit from therapy while denying involvement in the abuse. This opinion was shared by Drs. Williams and Naubors. Under these facts, we can not say the trial court was manifestly erroneous in finding no reasonable expectation of reformation by John.
The trial court also found there was no reasonable expectation of reform by Sara, such that she would be emotionally or psychologically capable of preventing further abuse of MRR. Drs. Post, Rathmell and Williams all described Sara as having a submissive or passive personality and found it unlikely she would be resolute enough to stop future abuse of MRR by John. Even Robert Walker, who believed Sara was becoming much more independent and assertive under therapy, was equivocal as to whether Sara would “stand up to” John. We find the trial court was not manifestly erroneous in finding no reasonable expectation that Sara would be capable of protecting MRR.
The general tenor of the expert testimony was best indicated by Dr. Williams, when he opined the likelihood of change in John, Sara and MRR’s home life to be “minimal”. We can not take issue with the trial court’s findings as to either John or Sara.
CUSTODY CONDITIONED ON JOHN AND SARA’S SEPARATION
John and Sara assert the trial court erred when it did not consider returning MRR to Sara conditioned on Sara separating from John. It is not clear from the trial court’s oral reasons whether it considered this option. However, the record contains sufficient evidence for this court to find the assignment is without merit. The evidence clearly shows it is unlikely Sara is emotionally or psychologically capable of fulfilling this condition. As Dr. Post testified:
“State: If the mother were to take the stand today and testify that she intended *1304 to leave the father — to obtain a divorce and leave the father and work towards getting the child back, would you have a difficult time accepting such testimony?
Dr. Post: Yes, I would. I mean, I would certainly have to see it happen and see it stick because so many times I saw her, you know, express that kind of resolve, I mean, unequivocally, in the face of what she thought was compelling evidence that she needed to do that and, then, just not be able to follow through.
State: But that, of course, goes hand in hand with her psychological make-up?
Dr. Post: Yes, it does.”
Robert Walker, a clinical social worker who counseled Sara over a long period, testified:
“State: Has it ever been discussed, the possibility of her leaving her husband as that being a way of enhancing her ability to get this child back?
Walker: The subject has been brought up, yes.
State: And what has been her comments to you about that?
Walker: Obviously, she’s still with her husband. She has been very strong in her opinion that if she were to get [MRR] back that she would be very vigilant for any possibility of abuse and would not be tolerant of that. And we’ve gone over, very explicitly, what she would need to do to fix that which would mean immediately leaving him. But leaving him as a strategy to convince the Court that [MRR] should come back to her is not something that she — to my knowledge — entertained at any length.
State: That’s unacceptable to her?
Walker: It’s very unacceptable.
State: She’s not going to leave her husband to get her daughter back?
Walker: Right.”
There is no question the evidence weighs heavily against Sara being able to fulfill any condition based on her separating from John. Sara has continued to live with John. She has made her choice and is not totally happy with it. Her suggested separation from John is purely speculative and would place the child at great risk. Under these circumstances, we find the trial court did not commit error in not considering this option.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against John and Sara R.
AFFIRMED.